UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOEL SWEITZER, LARA SWEITZER,
AS-1, a Minor, by his Next Friend,
PHYLLIS KORSON, and AS-2, a Minor,
by her Next Friend, PHYLLIS KORSON,

      Plaintiffs,

v.                                                                                  Case No. 1:09-CV-469

PINNACLE AIRLINES, INC., d/b/a                         HON. GORDON J. QUIST
NORTHWEST AIRLINK, and NORTHWEST
AIRLINES, INC.

      Defendant.
_____/

## **OPINION**

      Plaintiffs, Joel and Lara Sweitzer, along with their minor children through their next friend, Phyllis Korson, have sued Defendants, Pinnacle Airlines, Inc., d/b/a Northwest Airlink, and Norwest Airlines, Inc., alleging state law claims of negligence and gross negligence, breach of warranty, and respondeat superior, based upon an April 12, 2007, incident in which Pinnacle Airlines Flight # 4712, on which the Sweitzers were passengers, overran the runway upon landing. The Sweitzers filed their complaint in the Grand Traverse County Circuit Court on or about April 9, 2009, and Defendants removed the case to this Court, alleging diversity jurisdiction under 28 U.S.C. § 1332 as the basis for removal jurisdiction.[1]

      Defendants have now moved for summary judgment pursuant to Fed. R. Civ. P. 56. Having reviewed the parties' submissions, the Court concludes that oral argument is unnecessary. For the reasons set forth below, the Court will grant the motion in part and deny it in part.

---

[1] The Sweitzers also initially sued Northwest Regional Airport Commission, but that Defendant was dismissed with prejudice by stipulation of the parties following removal. (Docket no. 40.)

# I. FACTS

On April 12, 2007, the Sweitzers were passengers on Pinnacle Airlines Flight #4712 bound for Cherry Capital Airport, Traverse City Michigan. The Sweitzers were traveling from their home in California to Traverse City to attend a family wedding. The weather was reported as snowing. Upon landing, Flight #4712 overran the runway, which apparently was covered with ice and snow. The aircraft left the runway at approximately 45 miles per hour, and the main landing gear was sheared off and went over the top of the wing. The aircraft came to rest in deep snow banks.

All of the 49 passengers were evacuated from the plane and transported to the main airport building. The Sweitzers remained at the airport for about two hours while they attempted to find their baggage and arrange ground transportation. During this time they did not seek medical attention, nor did they complain of injuries. The Sweitzers proceeded with their plans, attending and participating in the wedding and reception that took place two days later. On April 15, 2007, the Sweitzers returned home via a Pinnacle Airlines flight.

Following the accident, the National Transportation Safety Board ("NTSB") issued an accident report, in which it noted that the "Bombardier/Canada Air Regional Jet (CRJ) CL600-2B19, N8905F, operated as Pinnacle Airlines flight 4712, ran off the departure end of runway 28 after landing at Cherry Capital Airport (TVC), Traverse City, Michigan." The report further noted that although the aircraft was substantially damaged, no passengers or crew members were reported injured. The NTSB report concluded that the pilot's decision to land without performing a landing distance assessment was the probable cause of the accident.

The Pinnacle Airlines flight was conducted as a Northwest Airlink. The Sweitzers purchased e-tickets rather than obtaining paper tickets. (Joel Sweitzer Dep. at 31; Lara Sweitzer Dep. at 30.) A tickets was purchased for each family member. Although Pinnacle Airlines conducted the flight, the tickets were issued by Northwest Airlines.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

Defendants move for summary judgment based upon one ground and, alternatively, partial summary judgment based upon three separate grounds. Defendants contend that they are entitled to summary judgment because the Sweitzers failed to file their complaint within one year after the date of the accident, as required by the contract of carriage. Alternatively, Defendants contend that they are entitled to partial summary judgment on: (1) the Sweitzers' claims for punitive and exemplary damages; (2) the Sweitzers' claim for gross negligence against Pinnacle Airlines and their negligence claim against Northwest; and (3) the Sweitzers' breach of warranty claim.

### *Contractual Limitation Period*

The contractual provision incorporated by reference into the Sweitzers' contract of carriage with Defendants limits the time to bring claims against Northwest Airlines to one year from the date of injury. The Sweitzers failed to file their complaint within this one-year period.

Pursuant to federal law, an airline is authorized to incorporate by reference terms from its filed tariff as part of a passenger's ticket so long as the passenger has notice of the incorporated terms. 29 U.S.C. § 41707; 14 C.F.R. §§ 253.1 (setting forth uniform disclosure requirements for terms incorporated by reference into contracts of carriage), 253.4 (specifying rules for incorporating terms by reference), 253.5 (specifying terms that may be incorporated). *See also Barry v. Delta Airlines, Inc.*, No. CV-02-5202 (DGT), 2009 WL 3260499, at *13 (E.D.N.Y. Oct. 9, 2009) (noting that "in order to bind passengers to domestic tariff provisions, an air carrier must provide the requisite notice"). Among the terms that an airline may include are "[c]laim restrictions, including time periods within which passengers must file a claim or bring an action against the carrier for its acts or omissions or those of its agents." 14 C.F.R. § 253.5(b)(2). The airline must give notice of the incorporated terms "on or with a ticket, or other written instrument given to a passenger, that embodies the contract of carriage and incorporates terms by reference in that contract." 14 C.F.R. § 253.5.

In support of their motion, Defendants cite the following provision in Northwest's Domestic General Rules Tariff:

> PERSONAL INJURY AND DEATH – 71
>
> – A) PERSONAL INJURY AND DEATH
>   NO ACTION SHALL BE MAINTAINED FOR INJURY TO OR DEATH OF ANY PASSENGER UNLESS:
>   1) NOTICE OF THE ALLEGED OCCURRENCE OF EVENTS RESULTING IN THE CLAIM IS PRESENTED IN WRITING TO THE GENERAL OFFICES OF THE CARRIER ALLEGED TO BE RESPONSIBLE WITHIN 90 DAYS, AND;
>   2) ACTION REGARDING THE CLAIM COMMENCES WITHIN ONE YEAR OF ITS ALLEGED OCCURRENCE.

(Defs.' Br. Supp. Ex. D.)

Federal common law governs the validity of an air carrier's limitation of its liability. *Deiro v. Am. Airlines, Inc.*, 816 F.2d 1360, 1365 (9th Cir. 1987); *Gluckman v. Am. Airlines, Inc.*, 844 F.

4

Supp. 151, (S.D.N.Y. 1994). Courts applying federal common law generally employ what is known as a "reasonable communicativeness" test to determine the validity of limitations of liability. *See Deiro*, 816 F.2d at 1364; *Huang v. Int'l Total Servs.*, No. 94-75368, 1997 WL 33377508, at *3 (E.D. Mich. Apr. 17, 1998). The Sixth Circuit has employed a "reasonable notice" test, which provides that a carrier may limit its liability to passengers only if "the carrier has made a 'reasonable' effort to warn passengers of the notice and filing requirements." *Barbachym v. Costa Line, Inc.*, 713 F.2d 216, 218-19 (6th Cir. 1983). The "reasonableness" of notice to passengers is a question of law for the court. *Id.* at 218.

The reasonable communicativeness test employs a two-step approach. First, the court assesses the physical characteristics of the ticket/contract, including "[f]eatures such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provision in question." *Deiro*, 816 F.2d at 1364 (quoting *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 863-64 (1st Cir. 1983)). Second, the court considers the particular circumstances of the case, including "the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice the passenger received outside of the ticket." *Id.* The court should also consider whether the plaintiff has extensive commercial air travel experience. *Id.*

With regard to the physical characteristics of the ticket, it is undisputed that the Sweitzers purchased e-tickets and do not have copies of their ticketing information. In support of their motion, however, Defendants attach an exemplar of e-ticket/transportation documents as Exhibit E to their brief. Defendants rely solely on this exemplar to establish the sufficiency and clarity of notice to the Sweitzers. The Court must disregard this document, however, because it is not accompanied by an affidavit or other document that attests to its validity or authenticity. As the Sixth Circuit has explained:

> Federal Rule of Civil Procedure 59(e) states that affidavits supporting a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The rule also mandates that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Fed. R. Civ. P. 56(e). "This court has ruled that documents submitted in support of a motion for summary judgment must satisfy the requirements of 'rule 56(e); otherwise they may be disregarded."

*Logan v. Denny's Inc.*, 253 F.3d 558, 569-70 (6th Cir. 2001) (citations omitted). Because Defendants fail to properly support this aspect of their motion, the Court must reject Defendants' timeliness argument.

Apart from Defendants' failure to authenticate the exemplar document, the Court rejects Defendants' argument for two additional reasons. First, as the Sweitzers note, the language of the purported exemplar indicates that the terms and conditions apply only to Northwest Airlines. Nowhere does the document reference Pinnacle Airlines, which, as Defendants argue in their brief, operated the flight and was in sole control. In spite of filing a reply, Defendants failed to address how the purported contract of carriage applies to Pinnacle Airlines.[2] Second, the Sweitzers point out that they have not sued Northwest Airlines as a common carrier, but rather allege that Northwest Airlines was negligent as a provider of Aviation Weather Reports to Pinnacle Airlines. Therefore, they argue, Northwest Airlines' contract of carriage is irrelevant to their claim against Northwest Airlines. Defendants failed to address this argument as well.

### *Punitive and Exemplary Damages*

Defendants next argue that they are entitled to summary judgment on the Sweitzers' claims for punitive damages and exemplary damages. Defendants are entitled to summary judgment on the

---

[2]Northwest's domestic tariff states that "when [Northwest] undertakes to issue a ticket, check baggage or make any other arrangements for transportation over the lines of any other carrier . . . [Northwest] will act only as an agent for such other carrier and will assume no responsibility for the acts or omissions of such other carrier." There is no indication that Pinnacle Airlines was acting as an agent for Northwest. *See Huang*, 1997 WL 33377508, at *7 (noting that United Airlines' conditions of contract stated that they applied to United Airlines' agents and there was no issue of fact that the defendant was acting as United Airlines' agent).

6

claim for punitive damages because punitive damages are not recoverable in Michigan absent express statutory authorization. *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 400, 729 N.W.2d 277, 286 (2006). The Sweitzers do not contend that a statute applies in this case.

Michigan law does permit exemplary damages. *Unibar Maint. Servs., Inc. v. Saigh*, 283 Mich. App. 609, 630-31, 769 N.W.2d 911, 923-24 (2009). Defendants contend that the claim for exemplary damages should be dismissed because actual damages include compensation for mental anguish and distress and would merely duplicate exemplary damages. *Veselenak v. Smith*, 414 Mich. 567, 574, 327 N.W.2d 261, 264 (1982) (observing that actual damages may "include compensation for shame, mortification, mental pain and anxiety, . . . and for annoyance, discomfiture and humiliation") (citations omitted). The Michigan Supreme Court has also stated that "[a] plaintiff claiming damages for mental and emotional distress would not be entitled to exemplary damages if mental and emotional distress damages are included as part of compensatory damages." *Phillips v. Butterball Farms Co.*, 448 Mich. 239, 251 n. 32, 531 N.W.2d 144, 149 n.32 (1995) (citing *Veselenak*, 414 Mich. at 574, 327 N.W.2d at 264).

The Court concludes that the Sweitzers' claim for exemplary damages should be dismissed. The Sweitzers may recover damages for mental distress and anguish as part of their compensatory damage claim, and they fail to address why exemplary damages would not be duplicative in this case. Moreover, the exemplary damages claim is subject to dismissal on an independent ground. An award of exemplary damages is permissible "for the 'humiliation, sense of outrage, and indignity' resulting from injuries 'maliciously, wilfully and wantonly' inflicted by the defendant." *Kewin v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401, 419, 295 N.W.2d 50, 55 (citation omitted). The Sweitzers have failed to present any evidence that Pinnacle Airlines or its employees inflicted the alleged injuries upon the Sweitzers in such manner. Although the Sweitzers' counsel has filed a Rule 56(f) affidavit stating that his clients are unable to respond to Defendants' motion because

discovery is still ongoing, this conclusory affidavit is insufficient under Rule 59(f) because does not state with particularity what discovery the Sweitzers would seek, what it might uncover, and how it would affect the Sweitzers' ability to prove their allegations. *See Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) ("Bare allegations or vague assertions of the need for discovery are not enough.").

### *Gross Negligence and Negligence Against Northwest*

Defendants next argue that the Sweitzers' gross negligence claim against Pinnacle Airlines should be dismissed because the Sweitzers cannot produce evidence showing conduct by any Pinnacle Airlines employee that meets the gross negligence standard. Defendants concede that a dispute of fact remains with regard to whether Pinnacle Airlines was negligent, but they contend that such evidence is insufficient to meet the standard of gross negligence.

Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Costa v. Cmty. Emergency Med. Servs., Inc.*, 475 Mich. 403, 411-12, 716 N.W.2d 236, 241 (2006) (quoting M.C.L. § 691.1407(7)) (internal quotations omitted). The Sweitzers' only allegation of gross negligence is that the Pinnacle Airlines flight crew failed to run the landing distance calculation required by Pinnacle Airlines' flight manual. Even if true, such omission would not support a claim that the flight crew acted with a substantial lack of concern for whether injury would result from their actions. Among those who would have been injured were the flight crew, and it is not logical to assume that the flight crew had a substantial lack of concern for their own safety. Moreover, the Sweitzers fail to present any evidence to support their claim and, as already noted, their Rule 56(f) affidavit is deficient. For the same reasons, the Sweitzers' allegation of willful and wanton misconduct, which is in the same class as intentional wrongdoing, *see Boumelhem v. Bic Corp.*, 211 Mich. App. 175, 185, 535 N.W.2d 574, 579 (1995), must be dismissed.

Defendants also argue that the Sweitzers' negligence claim against Northwest Airlines for providing inaccurate weather information to Pinnacle Airlines must be dismissed because there is no evidence of any such negligence. The Court agrees. The Sweitzers do not even address this argument in their brief, much less respond with any evidence in support of their negligence claim. Nor, as already mentioned, does their defective Rule 56(f) affidavit save this claim from summary judgment.

### *Warranty Claim*

Finally, Defendants argue that they are entitled to summary judgment on the implied warranty claim because an express contract of carriage existed between the parties. The Sweitzers respond that they pled the implied warranty claim in the alternative, in the event no express contract is found.

Because, as noted above, an issue remains regarding the existence of an express contract between the Sweitzers and Pinnacle Airlines, the Sweitzers should be permitted to proceed with their implied warranty claim as an alternative legal theory.

### III. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment in part and deny it in part. The motion will be granted with respect to the Sweitzers' claims for punitive and exemplary damages, their claim of gross negligence against Pinnacle Airlines, and their claim of negligence against Northwest Airlines. The motion will be denied with regard to Defendants' timeliness argument and the implied warranty claim.

An Order consistent with this Opinion will issue.

Dated: May 13, 2010 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE